IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,830

STATE OF KANSAS,
*Appellant*,

v.

MICAL BARLOW,
*Appellee*.

SYLLABUS BY THE COURT

1.

An order of acquittal must resolve a factual element in the case after jeopardy has attached. There is no question that jeopardy has attached when there has been a jury verdict of guilt and the language of the district judge's order in this case demonstrates that it resolved a factual element. The order therefore qualifies as an acquittal, and the Court of Appeals lacked jurisdiction to reinstate the defendant's conviction for attempted second-degree murder, despite error committed in the district court.

2.

In answer to the State's question reserved, this court holds that a district judge may *sua sponte* grant Stand-Your-Ground immunity to a criminal defendant after a jury has returned a guilty verdict but before sentence has been pronounced. Under the language of the controlling statute, the judge has the power to do what a defendant no longer has the right to ask the judge to do.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 20, 2013. Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed February 19, 2016.

Judgment of the Court of Appeals reversing and remanding to the district court is reversed. Judgment of the district court is affirmed.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the briefs for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This case concerns the Court of Appeals' reinstatement of defendant Mical Barlow's jury conviction for attempted second-degree murder after the district court's K.S.A. 2014 Supp. 21-5231's "Stand-Your-Ground" order dismissing that charge.

Barlow argues that the district judge's postconviction order was a judgment of acquittal untouchable by the Court of Appeals. The State would not classify the order as a judgment of acquittal, and it argues that, regardless, the Court of Appeals had appellate jurisdiction to reach the State's question reserved.

FACTUAL AND PROCEDURAL BACKGROUND

Liberal police officers, responding to a disturbance call originating from an apartment complex, found Barlow waving a gun outside the apartment of M.S., the mother of J.M.-M. Both J.M.-M. and his mother were inside. Officers ordered Barlow to drop the weapon and lie on the ground. Barlow complied, and officers handcuffed him.

2

The State charged Barlow with attempted second-degree murder of J.M.-M., aggravated assault of M.S., and aggravated assault of J.M.-M.'s uncle, who had been outside of the apartment before police arrived.

Barlow did not assert Stand-Your-Ground immunity before trial.

At trial J.M.-M. testified about the circumstances leading to the confrontation at his mother's apartment. J.M.-M. said he had been at Barlow's apartment a few doors away, where he, Barlow, and Barlow's ex-girlfriend, T.S., had been drinking wine for some time. J.M.-M. said that Barlow made a sexual advance toward him and tried to pull down J.M-M.'s pants. When J.M.-M. pushed Barlow away, Barlow ran into his bedroom and retrieved a gun. J.M.-M. heard several clicks and believed that Barlow had pulled the gun's trigger. J.M.-M. then tussled with Barlow, trying unsuccessfully to grab the gun. J.M.-M. then ran out of Barlow's apartment and to his mother's apartment.

At the close of the State's case-in-chief, Barlow sought a judgment of acquittal. Viewing the evidence admitted in the light most favorable to the State, the district judge denied the motion.

Barlow defended the case on the theory that his use of force was necessary to protect another. He testified that he and J.M.-M. had been intimate in Barlow's apartment in the weeks before the incident giving rise to the charges. According to him, it was typical for the two to drink alcohol and then engage in oral sex. Barlow testified that T.S. was also his sexual partner. On the day of the incident, the three became "highly intoxicated" and discussed engaging in "sexual activities with each other." Barlow said that he and J. M.-M. began "groping and fondling" each other while T.S., who was wearing only a shirt and panties, was unconscious in a chair. At some point, J.M.-M. pushed Barlow to the floor and climbed on top of T.S., who remained unconscious.

3

Barlow yelled at J.M.-M. to leave. Instead, J.M.-M. put one hand into T.S.'s panties and began masturbating. Barlow again yelled at J.M.-M. to leave, which J.M.-M. did not do. Barlow then jumped on J.M-M.'s back, trying to pull him away from T.S, but J.M.-M. resisted, flinging Barlow to the floor. Barlow then retrieved a loaded revolver and placed it against the back of J.M-M.'s head. When asked at trial if he pulled the trigger, Barlow replied, "It's possible." Barlow also acknowledged that he had told police he did pull the trigger but the gun did not fire because its safety was engaged. Barlow further testified that he had wanted to scare J.M.-M. with the sound of the gun being cocked. Barlow said he then chased J.M.-M. out of the apartment and into M.S.'s apartment.

Defense counsel did not renew the earlier motion seeking a judgment of acquittal at the close of all of the trial evidence.

The district court judge instructed the jury on the use of force in defense of another, *i.e.*, the defense theory. But the jury convicted Barlow of attempted second-degree murder of J.M.-M. and of aggravated assault of J.M-M.'s mother. The jury acquitted Barlow on the aggravated assault count connected to J.M-M.'s uncle.

Barlow's presentence investigation report included a letter that Barlow had apparently written 2 months before trial. The letter, opening with "To Whom This May Concern," alleged that J.M.-M. had raped T.S. and that Barlow had brandished his gun to stop the rape from continuing.

Before sentencing, the district judge issued a written order in which he ruled that Barlow qualified for K.S.A. 2014 Supp. 21-5231 immunity from prosecution on the attempted second-degree murder charge. Accordingly, the district judge wrote: "[Barlow's] conviction of attempted second[-]degree murder is vacated and that count is dismissed." The order further indicated that the district judge had considered immunity

*sua sponte* and that the immunity ruling meant the judge did not need to reach the merits of Barlow's latest motion for judgment of acquittal.

At sentencing, the State informed the district judge of its intent to appeal the immunity order. The district judge sentenced Barlow to 36 months' probation with an underlying sentence of 13 months' imprisonment on the remaining conviction for aggravated assault of M.S.

The State's notice of appeal cited K.S.A. 22-3602(b)(2), which permits appeal from an arrest of judgment, and, in the alternative, K.S.A. 22-3602(b)(3), which permits an appeal on a question reserved. The question reserved centered on the district judge's employment of the Stand-Your-Ground immunity statute to override the jury's verdict, vacate Barlow's attempted second-degree murder conviction, and dismiss that charge.

A panel of the Court of Appeals reversed the district court's immunity order, reinstated Barlow's attempted second-degree murder conviction, and remanded the case for further proceedings, presumably, resentencing. *State v. Barlow*, No. 108,830, 2013 WL 6799252, at *3 (Kan. App. 2013) (unpublished opinion). Relying on this court's decision in *State v. Jones*, 298 Kan. 324, 311 P.3d 1125 (2013), which stated that a criminal defendant must assert Stand-Your-Ground immunity before trial opens or a dispositive plea is entered, the panel held that the district judge had no legal basis for his unilateral decision. Rather than relying on either of the statutory subsections cited in the State's notice of appeal, the panel determined that it had appellate jurisdiction under K.S.A. 2012 Supp. 22-3602(b)(1), which allows the State to appeal "an order dismissing a complaint, information or indictment."

We granted Barlow's petition for review.

5

DISCUSSION

*Was the District Court's Order a Judgment of Acquittal?*

Barlow argues that the district judge's written order was a judgment of acquittal, which divested any state appellate court of jurisdiction to reinstate his conviction. The State argues that the order qualifies for full appellate review and rejection because it arrested judgment or dismissed a part of the State's case.

The determination of jurisdiction involves a question of law over which this court's scope of review is unlimited. *State v. Brown*, 299 Kan. 1021, 1027, 327 P.3d 1002 (2014). "Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes." *State v. Roberts*, 293 Kan. 29, 33, 259 P.3d 691 (2011).

One of the types of district court decisions the State may appeal is "an order dismissing a complaint, information or indictment." K.S.A. 2014 Supp. 22-3602(b)(1). It is this description of the district judge's order upon which the Court of Appeals panel relied. *Barlow*, 2013 WL 6799252, at *2. The State also may appeal an order arresting judgment. K.S.A. 22-3502. The State does not have a right to appeal a judgment of acquittal, because appellate review of a decision after acquittal constitutes double jeopardy. *Roberts*, 293 Kan. at 34 (citing *State v. Gustin*, 212 Kan. 475, 480, 510 P.2d 1290 [1973]).

This court has long recognized that "[t]he distinction between a judgment of acquittal [and] of dismissal is often not easily determined." *State v. Beerbower*, 262 Kan. 248, 252, 936 P.2d 248 (1997). And the "trial judge's characterization of his own action does not control the classification of the action." *State v. Whorton*, 225 Kan. 251, 254,

6

589 P.2d 610 (1979); see *Roberts*, 293 Kan. at 35 ("It does not matter how a party or a district court labels a motion or order; that characterization does not control.").

In *Roberts*, this court explained that in order for an order to be a nonappealable acquittal, it must "(1) resolve[] a factual element (2) after jeopardy has attached." 293 Kan. at 35.

> "The first aspect of this statement is the requirement that a judgment of acquittal be '"a resolution, correct or not, of some or all of the factual elements of the offense charged."' *Whorton*, 225 Kan. at 254 (quoting [*United States v.*] *Scott*, 437 U.S. [82,] 97[, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978)]); see Kansas Law Review Criminal Procedure Survey, 58 Kan. L. Rev. 1311, 1412 (June 2010) ('Judgments of acquittal resolve some or all of the factual elements of the case, and the law protects defendants from double jeopardy by preventing the prosecution from appealing these judgments.'); 15B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3919.6, p. 690 (2d ed. 1992) ('[T]he fact that the order is characterized as an acquittal does not defeat appeal if it does not rest on factual determination of an element of guilt or innocence.').

> "This general statement is supported by the Kansas statute that authorizes judgments of acquittal, K.S.A. 22-3419, which provides in pertinent part:

>> "'(1) The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information after the evidence on either side is closed *if the evidence is insufficient to sustain a conviction of such crime or crimes.* If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right.' (Emphasis added.)" *Roberts*, 293 Kan. at 35-36.

Turning to the jeopardy requirement, the *Roberts* court recognized that "jeopardy protections attach only 'when a jury is [i]mpaneled and sworn, or, in a bench trial, when the judge begins to receive evidence.' [Citations omitted.]" 293 Kan. at 37; see *State v. Ruden*, 245 Kan. 95, 99, 774 P.2d 972 (1989) ("In a jury trial, jeopardy attaches when a jury is impaneled and sworn"; "[i]n a bench trial, jeopardy attaches when the first witness is sworn.").

If both elements are present, "'"a judgment of acquittal, correctly or incorrectly arrived at, terminates the prosecution, and the double jeopardy clause of the Fifth Amendment bars further proceedings against the defendant." [Citations omitted.]'" *Roberts*, 293 Kan. at 39.

In this case, the Court of Appeals panel focused on what it believed to be the tardiness of the district judge's consideration of Stand-Your-Ground immunity. This focus on timing obscured the more basic question of whether the order underlying the appeal qualified as a judgment of acquittal. Again, the path taken by a district judge to arrive at such an acquittal order may be flawed, but, regardless, it is not subject to reversal on appeal. Reinstatement of a defendant's conviction is forbidden.

In this case, there is no question that the second element necessary for an acquittal order is present: jeopardy had attached. Barlow's jury had been impaneled and sworn, had received evidence, had heard arguments, had deliberated, and had returned a verdict. This moves us to address the first element, whether the district judge's order resolved some or all of the factual elements of the offense charged. See *Roberts*, 293 Kan. at 35.

The district judge wrote that he found J.M.-M. to be "an extremely unreliable witness" who "committed perjury throughout his entire testimony." In contrast, the judge regarded Barlow as credible and wrote that "various points of his testimony were

8

corroborated by other evidence." The district judge found that J.M.-M. was "at a minimum committing a sexual assault against [T.S.]" while she was unconscious due to intoxication, "but most likely was committing rape against her with his fingers . . . ." The district judge further determined that Barlow possessed a reasonable belief that J.M.-M. was raping T.S. Noting that Barlow had made multiple attempts to intervene physically before resorting to the retrieval and use of the revolver, the judge concluded that Barlow's use of force to stop the rape was reasonable. Ultimately, "by a preponderance of the evidence," the judge ruled that Barlow's version of events was true and that he was entitled to Stand-Your-Ground immunity.

Generally, a reference to "preponderance of the evidence" means "'evidence which shows a fact is more probably true than not true.'" *In re B.D.-Y*, 286 Kan. 686, 691, 187 P.3d 594 (2008). And the district judge's finding that Barlow's version of events was more probably true than not true eliminated the possibility that the State could prove beyond a reasonable doubt that Barlow's use of force was not reasonable. See K.S.A. 2014 Supp. 21-5108(c) (defendant entitled to instruction on every affirmative defense supported by evidence; once defendant produces such evidence, "state has the burden of disproving the defense beyond a reasonable doubt"). This necessarily means the district judge found that the State could not meet its burden to prove Barlow's criminal culpability; the State's evidence was insufficient to support a conviction for attempted second-degree murder. This determination qualifies as a resolution of factual elements of the charged offense.

Given this resolution, and the unquestionable attachment of jeopardy, we have no hesitation in holding that the district judge's order qualified as a judgment of acquittal.

In addition, the State's argument that the district court's order was a mere arrest of judgment is unsupported by the language of the district judge's order. A court may arrest

judgment "if the complaint, information or indictment does not charge a crime or if the court was without jurisdiction of the crime charged," K.S.A. 2014 Supp. 22-3502. The order under scrutiny here did not address either of the permissible statutory bases.

Because the district judge's order qualified as a judgment of acquittal, the Court of Appeals lacked jurisdiction to reinstate Barlow's conviction upon a successful State appeal. We note that, incidentally, this outcome also is consistent with our decision in *State v. Berreth*, 294 Kan. 98, 273 P.3d 752 (2012). In that case, we held: "When the State is entitled to appeal, it must elect to proceed under a specific statute or statutory subsection, and its election governs the remedy, if any, available." 294 Kan. 98, Syl. ¶ 4. Here, after narrowly identifying its statutory bases for appeal as K.S.A. 2014 Supp. 22-3602(b)(2) (appeal from order arresting judgment) and K.S.A. 2014 Supp. 22-3602(b)(3) (question reserved), the State was bound by its selections. K.S.A. 2014 Supp. 22-3602(b)(1) governing appeals from orders dismissing a complaint, information, or indictment was not an available option to support appellate jurisdiction in this case.

*Does the Question Reserved by the State Have Merit?*

The State's alternative jurisdictional basis for its appeal is K.S.A. 2014 Supp. 22-3602(b)(3), which allows the State to obtain an appellate ruling on a particular point of law, *i.e.*, a question reserved, without attacking or affecting the defendant's acquittal. See *Berreth*, 294 Kan. at 125. ("An appellate court's answer to a question reserved by the State has no effect on the criminal defendant in the underlying case."); *State v. Finch*, 291 Kan. 665, 674, 244 P.3d 673 (2011) (answer to question reserved determines judge erroneously granted motion of acquittal; judgment of acquittal unaffected).

Kansas appellate courts will consider a question reserved by the prosecution if the issue presented is of "statewide interest important to the correct and uniform

administration of criminal law." *Berreth*, 294 Kan. at 121 (citing cases). A question reserved is not appropriate "merely to determine whether error has been committed by the trial court." 294 Kan. at 121. Rather, resolution of the question reserved must provide helpful precedent. 294 Kan. at 122.

The question reserved as set forth in the State's notice of appeal reads:

"[W]hether the [district] court correctly interpreted and applied K.S.A. [2014 Supp.] 21-5231 post-prosecution to override a jury verdict that rejected the provided defense of another jury instruction and defense of another claim?"

In its brief before the Court of Appeals, the State reframed the question reserved as follows:

"1)    Can self-defense immunity be granted to overturn a jury verdict? . . .

"2)    Is immunity still viable after a probable cause determination has been made?"

During oral argument before this court, the State recast the question once again and asked simply: "How does self-defense immunity work?" Counsel for the State requested substantive and procedural guidance on K.S.A. 2014 Supp. 21-5231.

We understand the State's frustration and are sympathetic. As we previously explicitly recognized, the Stand-Your-Ground immunity statute provides "little guidance as to the procedural aspects of how to apply [it]." *State v. Ultreras*, 296 Kan. 828, 842, 295 P.3d 1020 (2013). But the proper forum in which to answer the State's ultimate question—"How does self-defense immunity work?"—is before the authoring body, the state legislature.

11

We may be able, however, to provide narrower guidance, based on the language of the question reserved in the notice of appeal and the reformulation of that question in the State's brief before the Court of Appeals. In essence, we interpret that limited question to be: "May a district judge *sua sponte* grant Stand-Your-Ground immunity to a criminal defendant after a jury has returned a guilty verdict but before sentence on the conviction has been pronounced?"

The State argues that this is a question of statewide importance because self-defense claims are common and because district courts need guidance on how to uniformly apply K.S.A. 2014 Supp. 21-5231. It had asserted before the Court of Appeals that there was "simply no precedent to aid the district courts." This assertion compels us to note that, at the time the State's brief to the Court of Appeals was filed, our decision in *State v. Ultreras*, 296 Kan. 828, 843, 295 P.3d 1020 (2013), was still 2 months from publication. And our decision in *State v. Jones*, 298 Kan. 324, 311 P.3d 1125 (2013), would not be filed until later in 2013. But we agree with the State's most basic point. The question as we have now restated it is one of statewide importance on which district courts need guidance to enable uniform application of the law. It is an appropriate question reserved.

The question also is one of statutory interpretation or construction, which we review de novo. The rubric governing our analysis of such a question is, by now, a familiar one.

"Interpretation of a statute is a question of law over which appellate courts have unlimited review. [Citations omitted.]

"The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett,* 290 Kan. 41, 47, 223 P.3d 780 (2010). While criminal statutes are generally strictly construed against the State,

12

this principle is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law. *State v. Phillips,* 299 Kan. 479, 495, 325 P.3d 1095 (2014). In *State v. Urban,* 291 Kan. 214, 216, 239 P.3d 837 (2010), we stated:

'An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. *Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent.* [Citation omitted.]' (Emphasis added.)" *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 (2015).

Because *Ultreras* and *Jones* have previously explored this territory, we begin with the legal principles we can reliably take from them.

In *Ultreras*, defendant Manuel Ultreras had filed a pretrial motion to dismiss in which he claimed Stand-Your-Ground immunity under K.S.A. 21-3219, the designation of the current statute before a 2011 recodification of our criminal procedure statutes. The district judge determined that Ultreras, as the movant, had the burden to prove by a preponderance of the evidence that his use of force was necessary and that Ultreras failed to meet this burden.

On appeal, we disagreed with the district judge's determination of the standard of proof and allocation of the burden of persuasion. We said:

"[T]he only standard of proof referenced in K.S.A. 21-3219 is to the standard of probable cause. To impose a preponderance of the evidence standard, we would have to add words to the statute." 296 Kan. at 843.

We then reviewed cases in several other jurisdictions that had addressed Stand-Your-Ground immunity statutes. Although we found some similarity between the Kansas and Florida statutes, we ultimately distinguished them.

"The Florida statute, like the Kansas statute, does refer to a probable cause standard, but only in reference to an arrest; it does not include language like that found in K.S.A. 21-3219(c) providing that a 'prosecutor may commence a criminal prosecution upon a determination of probable cause.' With no mention of the standard for initiating a prosecution, the Florida court felt the need to specify one and, in doing so, employed a commonly recognized rule of statutory construction that legislation should not be interpreted in a way that makes it meaningless. [Citations omitted.] In contrast to the Florida statute, . . . K.S.A. 21-3219(c) attaches the probable cause standard to the prosecution of a criminal case. Given that legislative direction, it is not necessary for us to guess at what the legislature may have intended.

"In addition, contrary to the situation in Florida, applying a probable cause standard in Kansas does not mean that K.S.A. 21-3219 is useless. Generally, a detached Kansas magistrate considering whether to issue a warrant or summons merely determines 'that there is probable cause to believe both that a crime has been committed and that the defendant has committed it.' K.S.A. 22-2302(1). Under K.S.A. 21-3219, . . . once a defendant raises justified use-of-force immunity before a court, a probable cause determination must also include a determination that the defendant's use of force was not justified under K.S.A. 21-3211, K.S.A. 21-3212, or K.S.A. 21-3213. Hence, the statute as written with a probable cause standard adds [a] requirement and is meaningful." *Ultreras*, 296 Kan. at 843-44.

This discussion led us to hold that the standard of proof in a hearing on whether a defendant is entitled to Stand-Your-Ground immunity from criminal prosecution is

14

probable cause and that the State bears the burden of establishing that the defendant's use of force was not justified as part of its burden. Based on the posture of the *Ultreras* appeal, this court was not called upon to make further rulings on the "procedures by which the immunity defense should be presented to or resolved by the district court." 296 Kan. at 845.

In *Jones* we addressed an additional procedural question.

In that case, after a jury convicted defendant Austin Jones on two counts of first-degree murder, Jones raised Stand-Your-Ground immunity for the first time on appeal. We held that a defendant could not wait that long to raise the Stand-Your-Ground immunity issue, and this holding was succinctly captured in the opinion's first syllabus paragraph, which reads: "Immunity under K.S.A. 21-3219 cannot be invoked for the first time on appeal after conviction." 298 Kan. 324, Syl. ¶ 1. However, we stated our holding and its supporting rationale more expansively in the body of the opinion:

"[The] additional protection [of the State's burden to establish a defendant's use of force was not justified, which was recognized in *Ultreras*] can be realized only if immunity under K.S.A. 21-3219 is asserted as early as possible prior to trial. In other words, to the extent that Jones urges us to look at the purpose of the statute to construe the procedure to be followed, his argument that immunity can be raised for the first time on appeal is self-defeating. If the purpose of the statute is to protect individuals from the burdens of prosecution and conviction, that purpose cannot be effected when immunity is raised for the first time on appeal. By that time, prosecution and conviction have occurred. The burdens they impose cannot be lifted.

"We also note that, although the question of whether K.S.A. 21-3219 immunity may be invoked for the first time on appeal is one of law, the determination to be made on the existence of probable cause . . . once the statute has been invoked necessitates a factual inquiry and determination. District courts are the places to hold evidentiary

15

hearings. Appellate courts are not. Indeed, Jones' case, with its many alcohol-imbibing witnesses and their conflicting stories, is an excellent example of a situation in which all of the factual examination and credibility weighing abilities and expertise of district courts would be well used.

"The State directs the court's attention to K.S.A. 22-3208(4), which provides that 'consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution . . . .' The only sensible reading of K.S.A. 21-3219 is that it creates an affirmative defense to which K.S.A. 22-3208(4) applies.

"Thus, on the only question before us today, we hold: If a defendant believes he or she is entitled to Stand-Your-Ground immunity under K.S.A. 21-3219, then the defense must be asserted before trial opens or a dispositive plea is entered. Such an assertion is a timely trigger of the State's probable cause burden. A defendant who waits to invoke K.S.A. 21-3219 immunity until appeal after conviction simply waits too long. By that time, the facts and the defendant's guilt beyond a reasonable doubt have been established. In Jones' situation in particular, the jury rejected his claim of self-defense. This means the State has already borne an evidentiary burden far higher than the probable cause burden imposed upon it by the Stand-Your-Ground statute." *Jones*, 298 Kan. at 333-34.

It is our *Jones* language requiring a criminal defendant seeking Stand-Your-Ground immunity to invoke the statute's protection before trial opens or a dispositive plea is entered that the State relies upon in this case. And we note that a Court of Appeals panel has done likewise in at least one recent case, where it stated that a district court may require by order or local rule that Stand-Your-Ground immunity be invoked early enough in the process that the issue can be decided in conjunction with other issues at a preliminary hearing. See *State v. Hardy*, 51 Kan. App. 2d 296, 303, 347 P.3d 222 (2015).

In *Jones*, we noted that K.S.A. 21-3219(a) affords immunity from "criminal prosecution," which explicitly includes "arrest, detention in custody[,] and charging or prosecution of the defendant." *Jones*, 296 Kan. at 330 (quoting K.S.A. 21-3219[a]). We also observed that defining "criminal prosecution" to include "prosecution" was not helpful to our interpretation of the statute. *Jones*, 296 Kan. at 332 (statute's circular definition "tells us nothing").

We then examined several of the defendant's arguments in favor of his tardy attempt to embrace Stand-Your-Ground immunity. *Jones*, 298 Kan. at 332-33. In the process, although we did not say so explicitly, our statutory analysis made the analytical shift from interpretation to construction, ultimately relying on the evident legislative purpose behind what was then K.S.A. 21-3219 to reject the defendant's claim.

Today's specific question requires that we draw a distinction between the situation before us in *Jones*—that is, the defendant's first-time-on-appeal effort to invoke Stand-Your-Ground immunity—and the situation before us now—that is, the district judge's invocation of Stand-Your-Ground immunity to acquit the defendant after a jury verdict of guilt but before sentence had been pronounced on the conviction. In essence, we must decide whether a district judge is endowed with the power to do what we have said our criminal procedure statutes would no longer permit a defendant to ask him or her to do.

We conclude that a district judge does have the power to do what the district judge did in this case.

First, the immunity statute itself does not make what the judge did impermissible. The State's "prosecution" of a defendant found guilty either by a judge or a jury generally ends with pronouncement of sentence. See *In re Beck*, 63 Kan. 57, Syl. ¶ 2, 64 P. 971 (1901) ("A judgment regularly rendered on one of the offenses included in the verdict,

17

which has been executed in part by the imprisonment of the defendant, is the end of the prosecution, and exhausts the power of the court in the case."); see also *State v. Arculeo*, 29 Kan. App. 2d 962, 972, 36 P.3d 305 (2001) (sentencing phase of criminal proceeding constitutes proceeding in the "'prosecution'" of a criminal case; pronouncement of sentence culmination of prosecution); *State v. Buchanan*, 78 Wash. App. 648, 652-53, 898 P.2d 862 (1995) (prosecution ends when final judgment entered on the cause); *Nicholson v. State*, 24 Wyo. 347, 157 P. 1013 (1916) (prosecution does not end until final judgment pronounced). Even *Jones* recognized this general principle. *Jones*, 298 Kan. at 332 ("The State's 'prosecution' of Jones ended with his sentencing."). The statute's language indicates that its protection potentially encompasses not only commencement of prosecution but also its continuation to sentencing.

Second, a judge is not prevented from ordering acquittal by K.S.A. 2014 Supp. 22-3208(4), which, as we recognized in Jones, *does* prevent a defendant from taking issue with the "institution" of a prosecution after the defendant has consented to trial or entered a dispositive plea. On the contrary, a judge may order an acquittal even after a guilty verdict, if, in the judge's estimation, the evidence was insufficient to support that verdict. See K.S.A. 22-3419(a); *State v. Lloyd*, 299 Kan. 620, 648, 325 P.3d 1122 (2014) (trial judge ordering acquittal determines whether, upon evidence, giving "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt"). If a judge is empowered to overturn a jury verdict *sua sponte* because the State failed to meet its burden to prove guilt beyond a reasonable doubt, certainly a judge can *sua sponte* overturn a jury verdict because the State failed to meet even its substantially lesser burden to show probable cause that a crime was committed, that the defendant committed it, and that any argument that the defendant used lawful force is without merit.

18

Having established the answer to the question before us and the reason this case differs from *Jones*, we hasten to add that we are not ruling that the district judge committed no error in this case. The existence and the proper exercise of power are discrete concepts. It appears from the record that the judge may have applied the wrong standard of proof when he couched his decision in terms of preponderance of the evidence rather than probable cause, and he may have allocated the burden of persuasion to the defense rather than to the State. *Ultreras*, 296 Kan. 828, governs these elements of Stand-Your-Ground immunity and must guide future proceedings. As discussed in relation to the acquittal issue, however, any error by the district judge does not support reinstatement of Barlow's attempted second-degree murder conviction by an appellate court.

One further, final note bears mention: The district judge in this case arrived at his decision to grant Barlow Stand-Your-Ground immunity without providing the State an opportunity for an evidentiary hearing on the issue. The State may not have desired one here, and, even if it did, the judge's choice not to provide one may have been understandable in this case's post-conviction posture. But, certainly, when a Stand-Your-Ground immunity issue arises pretrial, upon a defense motion or otherwise, the State should be provided an opportunity to meet its enhanced probable cause burden via an evidentiary hearing. As the Court of Appeals panel suggested in *Hardy*, it may be most sensible and efficient to combine such an immunity hearing with the defendant's preliminary hearing. *Hardy*, 51 Kan. App. 2d at 303. As we said in *Jones*, "[d]istrict courts are the places to hold evidentiary hearings. Appellate courts are not." 298 Kan. at 334.

CONCLUSION

We reverse the Court of Appeals' decision reinstating Barlow's attempted second-degree murder conviction. The Court of Appeals lacked jurisdiction to reinstate the conviction because the district judge had entered a judgment of acquittal on the charge. No remand to district court for resentencing or other further proceedings is necessary.

The clarified question reserved by the State is: May a district judge *sua sponte* grant Stand-Your-Ground immunity to a criminal defendant after a jury has returned a guilty verdict but before sentence on the conviction has been pronounced? The answer to this question is: Yes. A district judge may consider Stand-Your-Ground immunity *sua sponte* at any time before pronouncement of sentence.