NOT DESIGNATED FOR PUBLICATION

No. 114,909

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DONALD W. ESTELL, JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; TIMOTHY L. DUPREE, judge. Opinion filed January 27, 2017. Affirmed.

*Ian D. Tomasic* and *Ethan Zipf-Sigler*, assistant district attorneys, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

*Per Curiam*:  The State appeals the district court's dismissal of the aggravated battery charge against Donald W. Estell, Jr., for insufficient evidence offered at the preliminary hearing. The only issue the State has briefed on appeal is that the district court erred in not admitting the State's evidence of a 911 call made by Erica Rippetoe, the alleged victim of the aggravated battery. We believe this court lacks jurisdiction to hear this appeal because of the procedural way the State has chosen to file the appeal and frame the issues. But even if we have jurisdiction to hear the State's appeal, we conclude that the district court did not err in denying the admission of the 911 call.

1

FACTUAL AND PROCEDURAL BACKGROUND

Estell was charged with aggravated battery against Rippetoe stemming from events that occurred on July 15, 2015, in Kansas City, Kansas. Soon thereafter, on July 20, 2015, Rippetoe was found murdered. Much of the following account of what happened on July 15, 2015, comes from Rippetoe's friend, Angela Findley, through her interview with the police and her testimony at the preliminary hearing.

In the afternoon of July 15, 2015, Rippetoe was with Findley. At some point in the afternoon, Estell called Rippetoe asking for a ride from work. Rippetoe drove to pick up Estell, and Findley accompanied her along with Rippetoe's infant child. After Rippetoe picked up Estell from work, Estell drove the car, Rippetoe was riding in the front passenger seat, and Findley was in the backseat with Rippetoe's infant child. The four headed to Findley's apartment. At some point during the drive to Findley's apartment, Estell and Rippetoe began to argue.

The argument escalated and became physical when the group arrived in the parking lot at Findley's apartment. Rippetoe tried to get away by exiting the car and going into Findley's apartment. However, Estell tried to force Rippetoe back into the car. During the confrontation Estell hit and bit Rippetoe and, at one point, used the car door to strike her head. Rippetoe asked Findley to remove her infant from the car. As Findley grabbed the infant, Rippetoe broke away and ran from the car. Estell began to argue with Findley over the infant and eventually pulled the infant from Findley. Estell, who is not the infant's biological father, got into the car with the infant and left.

After Estell left, Findley found Rippetoe hiding in the parking lot behind her apartment complex and brought Rippetoe into her apartment. Rippetoe was hysterical following the confrontation and had visible injuries. Findley observed "a bite mark" on Rippetoe's arm and stated Rippetoe "was all red."

2

At some point, after dark, Estell returned to Findley's apartment. Rippetoe immediately began asking where her infant was located, and Estell indicated the infant was inside the car. Estell then began to force Rippetoe toward the car against Rippetoe's will. Rippetoe shouted for Findley to go get her infant. Findley rushed toward the car and realized the infant was not inside. By this time, Estell had Rippetoe at the car. A struggle ensued in which Estell tried to force Rippetoe into the car, Rippetoe resisted, and Findley did all she could to assist Rippetoe in staying out of the car. Estell eventually got Rippetoe in the backseat and drove away in a rush with the tires screeching. Findley was able to get the license plate number and called 911 to report the incident. Later that night, Findley spoke with Rippetoe on the phone. Rippetoe told Findley that Estell had thrown her from the car. Findley instructed Rippetoe to phone the police.

*Rippetoe's 911 call*

Rippetoe's 911 call began with the operator attempting to determine her location. Rippetoe told the operator that Estell had beaten her and had taken her child to his family members. Rippetoe believed the incident took place "3 hours ago." When the operator asked where Estell could be found, Rippetoe stated, "He just took off and left me after he got through beating me. I got marks, he done bit me, done bloodied my nose. I didn't try to wipe the blood [undiscernible] to leave evidence. I didn't do all of that."

When asked if she needed medical attention, Rippetoe said, "I think I might this time." However, she eventually turned down an ambulance, stating, "I don't like the attention. I'm not used to that. I don't like that." Rippetoe further explained her injuries saying she had "bite marks on me, my nose has been bloodied, I've been choked off." Throughout the phone call, Rippetoe was crying and seemed extremely agitated.

3

*Police investigation*

Following the 911 call, Officer Lauren Hopper and other police officers located Rippetoe around 9 p.m. When officers arrived at the scene, they observed Rippetoe with no shoes on and she looked intoxicated. Rippetoe had visible injuries, including a bloody nose, scratches on her arm, and visible bite marks on her thighs. Rippetoe told officers she had been in an argument with Estell and he was responsible for her injuries. During the interview, Rippetoe became upset with the officers and cursed at them. She refused treatment for her injuries and left the scene abruptly.

On July 20, 2015, Detective Randolph Slater interviewed Estell. The interview was in regard to both the battery of Rippetoe and her subsequent homicide. Estell admitted to biting Rippetoe after she became hostile in the car on July 15, 2015. Estell also stated that Rippetoe had hit him. The thrust of Estell's statement was that Rippetoe was the aggressor in the incident on July 15, 2015, and Estell was acting in self-defense.

*Criminal prosecution*

On July 22, 2015, the State charged Estell with aggravated battery against Rippetoe. Prior to the preliminary hearing, the State filed a motion to admit Rippetoe's 911 call. In the motion, the State pointed out that Rippetoe was not available to testify because she was deceased. The State claimed the 911 call was not testimonial in nature and, as such, did not violate Estell's confrontation rights. The State also alleged the 911 call fit "under the present sense impression, excited utterance, and statements of physical condition of declarant exceptions to the hearsay rule."

On November 5, 2015, Estell filed a memorandum in opposition to the motion to admit the 911 call. Estell maintained that the 911 phone call was testimonial in nature and

4

the admission of the evidence violated his confrontation rights. Estell also asserted that the 911 call was "inadmissible under any hearsay exception."

On November 13, 2016, the district court held a preliminary hearing. The hearing began with the court hearing oral arguments on the State's motion to admit the 911 call. After hearing the arguments and listening to the 911 recording, the district court found the statements by Rippetoe on the 911 call were testimonial in nature and denied the State's motion to admit the evidence. Specifically, the district court found that at the time of the call there was no ongoing emergency related to battery or kidnapping. The district court also found that during the call Rippetoe was attempting to assist in the prosecution of Estell by mentioning "evidence" and seemingly only wanting medical attention in an attempt to assist the prosecution. In response to the district court's ruling, the prosecutor stated that "the State objects to the court's ruling and just preserves this issue for appeal to the extent that that's possible."

The State then began its direct examination of Officer Hopper who had contacted Rippetoe in response to her 911 call. During the interview, Hopper noted that Rippetoe was "very intoxicated . . . and very upset." Hopper observed bite marks on Rippetoe's right and left thigh, "red marks to both sides of her neck and a small amount of blood to the left side of her neck." Hopper stated Rippetoe refused treatment for her injuries, cursed at the officers, and left the scene.

The State next called Findley to the stand and she testified about the incident on July 15, 2015, consistent with the account set forth above. She further testified that following the incident on July 15, 2015, Rippetoe "went into hiding for a couple days." Findley was shown photos of Rippetoe taken after the incident, and Findley stated that two of the photos looked like the bite marks on Rippetoe that Findley had observed within a week of the incident. The State admitted those two photos into evidence.

5

At that point in the hearing, the district court announced a recess so that the parties could research the issue of whether Rippetoe's statements to Findley would be admissible in the hearing under any exception to the hearsay rule. The district court ordered that the preliminary hearing be bifurcated to allow the State the chance to file a motion regarding the matter and to give Estell time to respond. The district court ordered Findley to return for the second portion of the preliminary hearing scheduled for November 24, 2015.

When the preliminary hearing resumed on November 24, 2015, the district court first considered the State's motion to admit Rippetoe's hearsay statements to Findley. The district court heard arguments from both sides and decided that Rippetoe's statements to Findley were testimonial and denied the State's motion. The district court further found that even if the statements were nontestimonial, the court would still exclude them as hearsay because it would not find the statements "reliable or made in good faith."

The State's final witness at the preliminary hearing was Slater who testified about his interview with Estell on July 20, 2015. Slater indicated that although Estell admitted that he hit and bit Rippetoe, he only took these actions in self-defense.

After hearing all the State's evidence, the district court ruled that there was insufficient evidence to establish probable cause and dismissed the aggravated battery charge against Estell without prejudice. An order of dismissal was filed by the district court on November 30, 2015. The State filed a notice of appeal on December 2, 2015, appealing "the dismissal of this case and all adverse rulings."

JURISDICTION

The State's brief, citing K.S.A. 2015 Supp. 22-3602(b)(1), asserts that it has the "right to appeal an order dismissing a complaint, information or indictment." The State points out that the district court dismissed the aggravated battery charge against Estell for

6

insufficient evidence after the preliminary hearing, making an appeal on this ground proper. In the alternative, the State argues that this court "has jurisdiction over a question reserved" pursuant to K.S.A. 2015 Supp. 22-3602(b)(3).

Estell points out that although the State would have grounds to appeal from the dismissal of a complaint against Estell, the State has failed to argue in its brief that there was sufficient evidence at the preliminary hearing to establish probable cause for the aggravated battery charge and, as such, the State has abandoned the argument on appeal. Estell also asserts that the State cannot bring an appeal on a question reserved because the issue in this case fails to "present a question of statewide importance."

Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitution. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012).

The State is correct in asserting that pursuant to K.S.A. 2015 Supp. 22-3602(b)(1), the prosecution has the right to appeal "from an order dismissing a complaint, information or indictment." The problem in this case, however, is that although this court has jurisdiction to consider an appeal of the district court's order dismissing the aggravated battery charge against Estell based on insufficient evidence at the preliminary hearing to establish probable cause, the State has not actually briefed this issue. The only issue briefed by the State is that the district court erred in not admitting the State's evidence of Rippetoe's 911 call. The State has failed to challenge the district court's exclusion of Rippetoe's statements to Findley based on hearsay. Moreover, the State fails to make any argument as to whether the evidence presented at the preliminary hearing, with or without the 911 call, was sufficient to bind Estell over for trial.

7

An issue not briefed by the appellant is deemed waived or abandoned. See *State v. Willliams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). A point raised incidentally in a brief and not argued therein is also deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Thus, although this court would have jurisdiction under K.S.A. 2015 Supp. 22-3602(b)(1) to consider an appeal of the district court's order dismissing a complaint, information, or indictment, the State has failed to brief the issue of whether the district court erred by dismissing the aggravated battery charge against Estell for insufficient evidence; thus, the State has abandoned this issue on appeal.

Likewise, we reject the State's attempt to appeal upon a question reserved by the prosecution pursuant to K.S.A. 2015 Supp. 22-3602(b)(3). In order for the State to appeal from a question reserved, the question must present an issue of statewide importance relating "to the correct and uniform administration of criminal law." *Berreth*, 294 Kan. at 121. A question reserved is not an avenue to determine if the district court committed an error. 294 Kan. at 121. Instead, a question reserved normally presupposes the current case has concluded yet resolves an issue that "is necessary for the proper disposition of future cases." *State v. Roderick*, 259 Kan. 107, Syl. ¶ 1, 911 P.2d 159 (1996). A successful appeal of "a question reserved does not affect the defendant" because the decision "typically operates only prospectively." *Berreth*, 294 Kan. at 113.

Also, the resolution of a "question reserved must provide helpful precedent." *State v. Barlow*, 303 Kan. 804, 811, 368 P.3d 331 (2016). No helpful precedent would be established through a decision in this case. Although the State maintains there is no caselaw in Kansas regarding whether statements made during a 911 call are testimonial in nature, courts need not look any further than *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), to find an extensive analysis of the issue. Moreover, the Kansas Supreme Court has established a four-factor test to determine whether out-of-court statements in general are testimonial in nature. See *State v. Brown,* 285 Kan. 261,

8

291, 173 P.3d 612 (2007). Thus, accepting the State's appeal in this case on a question reserved is unnecessary to establish precedent that may be useful in future cases.

In sum, although we would have jurisdiction to consider the State's appeal from the dismissal of the complaint against Estell under K.S.A. 2015 Supp. 22-3602(b)(1), the State has abandoned this issue by failing to brief it. Moreover, the State has failed in this case to satisfy the requirements for bringing an appeal upon a question reserved by the prosecution pursuant to K.S.A. 2015 Supp. 22-3602(b)(3). Nevertheless, in the event it is determined on review that we are wrong to dismiss this appeal for lack of jurisdiction, we will proceed to address the merits of the single claim the State raises in this appeal.

### DID THE DISTRICT COURT ERR IN NOT ADMITTING THE STATE'S EVIDENCE OF THE 911 CALL?

The State contends that the district court erred in not admitting the State's evidence of Rippetoe's 911 call. The State goes through an extensive overview of the caselaw, discussing *Ohio v. Clark*, 576 U.S. ___, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015); *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011); *Davis*, 547 U.S. 813; *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); and the Kansas case, *Brown*, 285 Kan. 261. The State maintains that despite all of this precedent, there is "no bright line rule" and no case from Kansas on whether statements from a call to 911 are testimonial. The State then cites to four cases from other jurisdictions to demonstrate that other courts have held 911 calls are nontestimonial. Lastly, the State argues that Rippetoe's statements fit under the hearsay exceptions of present sense impression, excited utterance, and statements of physical condition.

Estell contends that Rippetoe's statements on the 911 recording are inadmissible and the district court was correct in excluding the evidence. Estell points out that while the State cites cases from other jurisdictions that have held 911 calls are nontestimonial,

9

there are also cases from other jurisdictions that have held such statements are testimonial in nature. Estell asserts that there was no ongoing emergency during Rippetoe's call because the alleged battery had taken place some 3 hours before the call.

When addressing a constitutional claim, this court is addressing a question of law which falls under de novo review. *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014). The Confrontation Clause of the Sixth Amendment "provides that '[i]n all criminal prosecution, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford*, 541 U.S. at 42. The Confrontation Clause prohibits testimonial statements from being admitted unless the witness who made the statements is available to testify or the defendant has previously had an opportunity to cross-examine the witness. 541 U.S. at 53-54.

A statement is testimonial when it is made during the course of an interrogation in which "the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. But a statement is nontestimonial when it is made during an interrogation in which the primary purpose is to aid in "an ongoing emergency." 547 U.S. at 822. While an ongoing emergency can be an important relevant factor in determining whether a statement is testimonial, it is not the only factor a court should consider. *Bryant*, 562 U.S. at 366. In determining the primary purpose of the statement, a court "should look to all of the relevant circumstances." 562 U.S. at 369.

Synthesizing the holdings of several United States Supreme Court decisions, the Kansas Supreme Court has established a four-factor test to determine whether an out-of-court statement is testimonial in nature. See *Brown*. 285 Kan. at 291. These factors are:

> "(1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?

"(2) Was the statement made to a law enforcement officer or to another government official?

"(3) Was proof of facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances, including circumstances of whether

(a) the declarant was speaking about events as they were actually happening, instead of describing past events;

(b) the statement was made while the declarant was in immediate danger, *i.e.*, during an ongoing emergency;

(c) the statement was made in order to resolve an emergency or simply to learn what had happened in the past; and

(d) the interview was part of a governmental investigation; and

"(4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.*, was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?" 285 Kan. at 291.

Applying the four-factor test of *Brown* to the facts herein supports the district court's conclusion that the statements made by Rippetoe on the 911 tape are testimonial in nature. Applying the first factor, it is clear that an objective witness would reasonably believe the statements would be available in a future prosecution. See 285 Kan. at 291. During the 911 call, Rippetoe talks about her injuries multiple times and specifically mentions preserving evidence. Furthermore, as Estell points out, most people are aware it is common practice to record 911 calls. Applying the second factor, Rippetoe's 911 call clearly was made to a "government official" and possibly even a "law enforcement officer." See 285 Kan. at 291.

The third factor of *Brown* is whether proof of facts potentially relevant to a later prosecution was the primary purpose of the interview when viewed from an objective totality of the circumstances. 285 Kan. at 291. The court offers four subfactors to demonstrate this factor, at least three of which are met in this case. First, Rippetoe was

11

"describing past events," specifically an alleged battery/kidnapping that happened approximately 3 hours before the 911 call. See 285 Kan. at 291. Second, the statement was not made when Rippetoe was still "in immediate danger" or "during an ongoing emergency." See 285 Kan. at 291. We note with significance that Rippetoe rejected the operator's offer to call for an ambulance. Third, Rippetoe's statements, at least in regard to the battery, were not made "to resolve an emergency" but rather to inform the police of past events that had happened 3 hours earlier. See 285 Kan. at 291. While the State might maintain that an ongoing emergency was taking place because Rippetoe believed her child had been kidnapped, that is not the charge here. Instead, the State is trying to use the statements as substantive evidence that Estell committed a battery, something that clearly was not ongoing when the 911 call was made.

Looking to the fourth and final factor of *Brown*, the statement in this case was rather informal. See 285 Kan. at 291. The only factor lending it to being formal is that the statement was recorded and some of the statements made on the 911 call were "made in response to questions." See 285 Kan. at 291. Thus, this final factor does not favor the statements being testimonial. However, given that three of the four *Brown* factors demonstrate that Rippetoe's statements were testimonial in nature, the district court was correct in finding that the admission of the statements without an opportunity for cross-examination would have violated Estell's rights under the Confrontation Clause.

Because the admission of the statements on the 911 call would have violated Estell's rights under the Confrontation Clause, we do not need to address the State's arguments as to the application of certain hearsay exceptions. We conclude that the district court did not err in excluding the State's evidence of the 911 call. We offer no opinion on whether the district court properly dismissed the aggravated battery charge against Estell after the preliminary hearing because the State failed to brief this issue.

Affirmed.

12