No. 119,697

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIELLE DAWN JUSTICE-PUETT,
*Appellant*.

SYLLABUS BY THE COURT

1.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings.

2.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible.

3.

When the words of K.S.A. 2018 Supp. 21-5805(c) are given their ordinary meaning, and the language is read in context with the other subsections of the statute, it is clear that the terms "tool" and "device" are *both* modified by the descriptive phrase "designed to allow the removal of any theft detection device." Thus, the phrase "designed to allow the removal of any theft detection device" requires an intentional design particular to, and designed for the purpose of, the removal of any theft detection device.

4.

Viewing all the evidence in a light most favorable to the State, no rational fact-finder could have found defendant guilty of possessing a tool or device designed to allow the removal of any theft detection device. Without evidence of what tool defendant may have used, it could not meet its burden of proof regarding the intentional design element. Defendant's motion for judgment of acquittal should have been granted.

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed September 13, 2019. Conviction reversed and sentence vacated.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Bethany C Fields*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

FOTH, J.:  Danielle Dawn Justice-Puett appeals her conviction for possession of a theft detection device remover, claiming she did not violate the terms of the statute. K.S.A. 2018 Supp. 21-5805(c) reads:

> "**Unlawful acts involving theft detection shielding devices**. It shall be unlawful to:
>     . . . .
>     "(c)  possess any tool or device designed to allow the removal of any theft detection device from any merchandise with the intent to use such tool to remove any theft detection device from any merchandise without the permission of the merchant or person owning or holding such merchandise."

Justice-Puett argues that the statute only prohibits possession of either a tool or device *specifically* designed to remove or defeat theft detection devices on merchandise. Since the State had no specific evidence of what Justice-Puett used to cut a security

detection device from two cell phone screen protectors, she argues that the State could not possibly have met its burden of proving that she possessed such an intentionally designed tool or device. She appeals the district court's denial of her motion for judgment of acquittal, as well as the jury's verdict, based on insufficiency of the evidence. Justice-Puett was also convicted of misdemeanor theft but does not appeal that verdict.

The State makes simultaneous or alternative arguments. The State's primary argument at trial and on appeal is that the statute prohibits possessing *any* kind of tool or device *capable* of removing a theft detection device; that if it is capable, it was "designed to allow" that removal. For example, if a theft detection device may be removed from merchandise by cutting it away, then a knife, scissors, or nail clippers are tools or devices "designed to allow" that removal.

The State also argues that the district court was correct in its slightly different interpretation of the statute. The district court found that the language "designed to allow the removal" only modifies device, not tool. The district court acknowledged that the statute requires an intentional design, but only as to devices.

Both parties argue that the statute is plain and unambiguous in support of their positions. The case is one of first impression. There is no relevant precedent interpreting this subsection of the statute since it was substantially revised in 2010. See L. 2010, ch. 136, § 90 (making "removing a theft detection device, without authority, from merchandise or disabling such device prior to purchase" prima facie evidence of intent to deprive permanently); L. 2010, ch. 136, § 91 (removing "[u]nlawful removal of a theft detention device" from K.S.A. 21-5805).

This appeal rests solely on an issue of statutory interpretation. When resolution of a sufficiency-of-the-evidence challenge rests on questions of statutory interpretation, this court exercises unlimited review because statutory interpretation is a question of law. See

3

*State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). For the reasons below, this court agrees with Justice-Puett, reverses her conviction, and vacates her sentence.

*Relevant Facts*

The primary witness for the State was the store security officer from the Target store where the theft occurred. One day while checking the "high theft area" of electronics and accessories, he noticed that two cell phone screen protector boxes were missing. He suspected theft because someone had cut the merchandise from two yellow anti-theft detection tabs, found on "locking peg hooks," leaving the security device behind. The witness explained that the peg hooks lock magnetically. They have a plastic cap that is unlocked with a magnetic key that Target employees "carry around." The magnet that unlocks a locking peg hook is called a Q4 key. The security officer also testified that "yellow hanging tabs" were another anti-theft device. The store clips this tab to valuable products. It is only removable by a store employee at the checkout register using a "heavy duty magnet," called an S3 key.

The security officer also testified that the only way to remove the screen protector packaging from the yellow hanging security tab would be with "some sort of cutting device . . . [like] nail clippers[,] scissors[, or a] pocketknife." Otherwise, a customer would need help from an employee with a Q4 key to unlock the peg hook and then an employee at the register to remove the yellow hanging tab with an S3 key. Cutting the product packaging from the yellow hanging tab would "defeat" both the locking peg hook and the magnetic security tab.

Upon finding the yellow security tabs on the still-locked peg hooks, the security officer reviewed the surveillance videos from the day before and observed Justice-Puett standing at the location in question with two children by her shopping cart. She assessed the locked peg hook and reached into her pocket to retrieve "a very small object [that] is

4

not visible on camera." Justice-Puett "in some way defeat[ed] the yellow hanging tab anti-theft devices and the locking peg hook to be able to remove the [two screen protectors]."

The surveillance videos then showed Justice-Puett and her children moving through the store with the items still in her cart but lost sight of them as they entered the food area because it did not have cameras. Justice-Puett then went through check-out and bought household items. She did not purchase or return any items from the electronics section of the store.

Justice-Puett later told a police officer that she "took [the screen protectors] out of the box for [her] daughter to try on her phone" but could not remember what happened to them after that. The officer testified that the surveillance video showed Justice-Puett "manipulating a product package" to remove it from the hanger. On cross-examination, he said "you can see something in her hand [but] can't tell exactly what it is."

*The District Court Ruling*

At the conclusion of the State's evidence Justice-Puett moved for judgment of acquittal, arguing that the State presented no evidence that she possessed "a tool or device designed to allow the removal of any theft detection device from any merchandise . . . such as the S3 magnetic key [or] the Q4 magnetic key." The only evidence of the object she allegedly used in the theft were "assumptions made by the officer and by loss prevention . . . in regard to nail clippers, scissors, [or] a knife [that are] general purpose items and not items designed to remove an anti-theft detection device."

5

The State responded by arguing:

"Regarding the theft detection device, the subsection that she is under, however, is that it's any tool or device designed to allow the removal of any theft detection device from merchandise.

"A cutting tool is designed to cut. It would be designed to cut away a theft detection device. I don't think it has to just be the special magnet or some kind of special packaging. . . . It's just any, and any tool or device designed to allow the removal of the theft detection device . . . ."

The district court denied Justice-Puett's motion, stating:

"My reading of the statute is one, unlawfully and feloniously possess[es] any tool to allow removal of any theft detection device or unlawfully and feloniously possess[es] a device designed. Those are two separate items. One requires the design. The other one simply is any tool to allow the removal of any theft detection device.

"There is—so my reading of this statute is that a pair of scissors, a knife, even though they have other uses and [are] designed for other—if you want—we're hung up on this terminology design. I think that only applies to a device, not to the tool. Not to a tool.

"And therefore there is evidence that she reaches into her pocket. Appears to have something in her hand. I have no idea what it is. The testimony is that the items removed would have had to have been cut or punctured to remove those, and for that reason I'm denying the motion on both Counts 1 and 2."

*Analysis*

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative

6

intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 303 Kan. at 813. Without any ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 303 Kan. at 813.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). The legislative intent expressed in K.S.A. 2018 Supp. 21-5805(c) becomes clear when read *in pari materia* with the other subsections.

K.S.A. 2018 Supp. 21-5805 in its entirety states:

"**Unlawful acts involving theft detection shielding devices**. It shall be unlawful to:

"(a) Manufacture or distribute in any way a laminated or coated bag or device particular to and intentionally marketed for shielding and intended to shield merchandise from detection by electronic or magnetic theft alarm sensor;

"(b) possess any laminated or coated bag or device particular to and designed for shielding and intended to shield merchandise from detection by an electronic or magnetic theft alarm sensor, with the intent to commit theft;

"(c) possess any tool or device designed to allow the removal of any theft detection device from any merchandise with the intent to use such tool to remove any theft detection device from any merchandise without the permission of the merchant or person owning or holding such merchandise; or

"(d) possess one or more fraudulent retail sales receipts or universal product code labels or possessing the device which manufactures fraudulent retail sales receipts or universal product code labels with the intent to cheat or defraud a retailer. A person having possession, custody or control of 15 or more such receipts or labels or such device shall be presumed to possess such items with the intent to cheat or defraud a retailer.

7

"(e)  Violation of this section is a severity level 9, nonperson felony."

Subsections (a), (b), and (d) all prohibit the possession, manufacture, or distribution of items specifically and intentionally designed to defeat electronic or magnetic theft alarm sensors, manufacture fraudulent sales receipts, or otherwise cheat or defraud retailers. Subsection (a) uses the phrase "particular to and intentionally marketed for." Subsection (b) prohibits possession of a "bag or device particular to and designed for" shoplifting. While it is true that a person *could* use general purpose items like scissors, knives, and nail clippers to remove a theft detection device, the other subsections of the statute also lead us to conclude that "any tool or device *designed to allow* the removal of any theft detection device" as prohibited by subsection (c), means objects *particular to and designed for* the purpose of defeating theft detection devices, as more clearly expressed in subsection (b). (Emphasis added.)

The State's argument, that no intentional design of the tool or device is required, is inherently rejected by this interpretation of the statute. The district court's rationale was different but is also a flawed reading of K.S.A. 2018 Supp. 21-5805(c). The district court essentially found that a reasonable jury might infer from the evidence that Justice-Puett possessed some common "tool" with the intent to remove a security device by cutting it from the merchandise and that this violated the statute. The district court conceded that the statute required an intentional design but found that this element only applied only to devices, not tools. We disagree and find that the language of the statute is plain and unambiguous, even when isolated from the context of the whole statute.

Merriam-Webster Dictionary defines "tool" as "a handheld device that aids in accomplishing a task." Merriam-Webster (online ed. 2019). It defines "device" as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Merriam-Webster (online ed. 2019). Ordinarily, courts presume that the Legislature does not use redundant language, and we try to give meaning to every word

8

in the statute. See *State v. Roeder*, 300 Kan. 901, 923-24, 336 P.3d 831 (2014); Scalia & Garner, Reading Law: The Interpretation of Legal Texts, pp. 174-79 (2012). K.S.A. 2018 Supp. 21-5805(c) contains one sentence with no commas. "It shall be unlawful to: . . . (c) possess any tool or device designed to allow the removal of any theft detection device from any merchandise with the intent to use such tool to remove any theft detection device from any merchandise without the permission of the merchant or person owning or holding such merchandise." Applying basic rules of grammar, we agree with Justice-Puett that the descriptive phrase "designed to allow the removal of any theft detection device" is an adjective phrase that describes or modifies the nouns "tool" *and* "device." Because the adjective phrase was placed after two nouns used in the disjunctive (or), and there are no commas in the sentence, common sense tells us that this adjective phrase necessarily modifies the two nouns preceding it.

The district court's reading of this single sentence subsection would mean that it prohibits two separate acts of possession, with separate elements, one relating to a "tool" and another relating to a "device designed." The first proscribed conduct would be possessing any tool with the intent to use *such tool* (but not a device) to remove any theft detection device from any merchandise without the permission of the merchant or person owning or holding such merchandise. The second proscribed conduct would be possessing any device designed to allow the removal of any theft detection device from any merchandise. There would be no element of intent since that would only apply to tools. This reading of the statute cannot reflect the legislative intent. The district court is reading commas into the sentence that do not exist. The Legislature did not break this single sentence subsection into separate clauses that describe separate offenses, one which requires criminal intent and one which does not.

Finally, the district court's reading creates duplicative prohibitions within the same sentence. If the statute makes it illegal to possess *any tool* with the intent to use it to defeat theft detection devices, it is unnecessary to also prohibit *devices designed* to do so.

9

Any tool would include those so designed. The district court's extraction of the term "tool" from the "designed" requirement does not give these common words their ordinary meaning.

This court concludes that K.S.A. 2018 Supp. 21-5805(c) is plain and unambiguous in prohibiting the possession of any object intentionally designed to allow removal of theft detection devices with the intent to do so without the permission of the merchant or person owning or holding such merchandise. Examples of such an object would be the Q4 and S3 demagnetizing tools possessed by the store employees, or black market versions of them. The intent requirement of the statute differentiates store employees, who legally carry such tools, from shoppers, who would presumably have no business carrying their own demagnetizer in a retail store. Under this plain reading, criminal intent can be inferred from possession. While K.S.A. 2018 Supp. 21-5805(c) may contain a superfluous word, the legislative intent is clear. It is to prohibit would be shoplifters from possessing specifically designed tools of the trade.

*Sufficiency of the Evidence*

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, the standard of review is whether, after reviewing all the evidence in a light most favorable to the State, this court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). In performing this review, this court does not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. 307 Kan. at 668.

Even viewing all the evidence in the light most favorable to the State, no rational fact-finder could have found Justice-Puett guilty of possessing a theft detection device remover. There was no evidence in support of the intentional design element. None of the

10

State's witnesses could say what Justice-Puett used to remove the yellow hanging security tags from the screen protectors, only that she did so without seeking help from an employee. The security officer believed she had cut the packaging but did not take pictures, did not retain the yellow hanging tags, and did not discover any discarded packaging. The district judge thought the surveillance video showed her use something she took from her pocket but concedes, "I have no idea what it is." The district court should have granted Justice-Puett's motion for judgment of acquittal at the conclusion of the State's evidence. Justice-Puett's conviction for possession of a device detection remover is reversed, and her sentence for that charge is vacated.

Justice-Puett appeals other claims of prosecutorial error and improper argument to the jury, all relating to language used and the above issues of statutory interpretation. Because we have held that judgment of acquittal should have been granted at the close of the State's evidence, those claims are moot.