NOT DESIGNATED FOR PUBLICATION

No. 115,569

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DENISE MARIE BYRD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed August 4, 2017. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*:  Denise Marie Byrd appeals the district court's decision to bypass intermediate sanctions and directly impose the underlying sentence after finding Byrd violated the terms and conditions of her probation. In bypassing intermediate sanctions, the district court relied on K.S.A. 2016 Supp. 22-3716(c)(9), finding that public safety would be jeopardized by imposing an intermediate sanction. On appeal, Byrd argues (1) the court failed to make particularized findings that utilizing intermediate sanctions would jeopardize public safety in this case and (2) the court violated her due process

1

rights by relying on an investigative report in order to bypass intermediate sanctions and impose the underlying sentence.

Finding no error, we affirm the district court.

FACTS

Because the procedural history in this case is rather confusing, we present the facts in the following detailed chronology:

- December 19, 2012:  Byrd committed crimes of vehicle burglary and identity theft in Johnson County, Kansas.
- January 3, 2013:  Byrd committed crimes of vehicle burglary and identify theft in Johnson County, Kansas.
- January 4, 2013:  Byrd committed crimes of vehicle burglary and identity theft in Johnson County, Kansas, which led to a vehicle chase into Missouri. Byrd ultimately was arrested and detained in Missouri.
- February 7, 2013:  Criminal complaint filed in case No. 13CR310, Johnson County, Kansas, against Byrd.
- February 10, 2014:  Byrd sent a written request to Johnson County seeking final disposition of all criminal charges for which detainers had been lodged with the Missouri Department of Corrections (MDOC), where she was in custody.
- June 6, 2014:  Byrd moved from Missouri to Kansas custody pursuant to the detainer on criminal charges in Johnson County, Kansas, case No. 13CR310.
- July 22, 2014:  Byrd pled guilty to two counts of vehicle burglary and two counts of identity theft in case No. 13CR310.
- September 10, 2014:  Byrd was sentenced to 18 months of probation with an underlying term of 26 months in prison.

- November 5, 2014: The State filed a motion to revoke Byrd's probation based on failure to report to her probation officer, noting that Byrd's whereabouts were unknown.

- February 26, 2015: Byrd was arrested on warrant issued for alleged probation violation.

- March 26, 2015: Byrd stipulated to violation of the conditions of her probation. The court revoked and reinstated probation for a new 12-month term to be served in the residential center program. The court acknowledged that Byrd had a pending detainer out of Wyandotte County, Kansas, that needed to be resolved.

- April 4, 2015: Byrd was released from the residential center program in order to resolve the charges against her in Wyandotte County, Kansas. Byrd ultimately was remanded to the Kansas Department of Corrections on the Wyandotte County case.

- August 21, 2015: Byrd was released by the Kansas Department of Corrections (on the Wyandotte County case) to Missouri based on a pending detainer.

- September 23, 2015: Byrd was released by the MDOC.

- October 19, 2015: The State filed a motion to revoke Byrd's probation based on failure to report to her probation officer since release from Missouri, noting Byrd's whereabouts were unknown. The court issued an arrest warrant based on the alleged probation violation.

- November 14, 2015: Byrd was arrested in Missouri with respect to an incident unrelated to this case. After her arrest, the MDOC placed Byrd in custody at the Women's Eastern Reception Diagnostic Correctional Center (WERDCC).

- December 4, 2015: Byrd was released by the MDOC to Johnson County, Kansas, based on her outstanding arrest warrant for an alleged probation violation.

3

- January 21, 2016:  Byrd stipulated to violating the conditions of probation. The district court revoked Byrd's probation and imposed the underlying sentence, finding it was unnecessary to impose intermediate sanctions because doing so would jeopardize public safety.

ANALYSIS

Byrd raises two arguments on appeal. First, she argues the district court failed to make the "particularized" findings necessary to support its determination that utilizing intermediate sanctions would jeopardize public safety in this case. Second, she argues the district court violated her constitutional right to due process of the law by relying on a report from the MDOC to bypass intermediate sanctions and impose the underlying prison sentence. We address each of Byrd's arguments in turn.

*Particularized findings*

Byrd argues the district court failed to make the particularized factual findings necessary to bypass intermediate sanctions under K.S.A. 2016 Supp. 22-3716(c)(9). The procedure for revoking an offender's probation or assignment to community corrections is governed by K.S.A. 2016 Supp. 22-3716. Prior to 2013, the district court had discretion to revoke probation and order the offender to serve an underlying sentence once the court made a finding that the offender violated one or more conditions of probation. *State v. Brown*, 51 Kan. App. 2d 876, 879, 357 P.3d 296 (2015), *rev. denied* 304 Kan. 1018 (2016).

In 2013, however, our legislature amended K.S.A. 22-3716. These amendments limit the district court's discretion to immediately impose the underlying sentence when an offender violates the conditions of probation. After finding one or more conditions of probation have been violated, the amended statute now requires the court to apply

4

graduated intermediate sanctions, ranging from modification of the defendant's release conditions to brief periods of confinement in jail that increase in length depending on the number of lesser sanctions already imposed by the court. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D). But there are exceptions to this new rule. Relevant here, K.S.A. 2016 Supp. 22-3716(c)(9) provides the court with discretion to revoke probation without having previously imposed an intermediate sanction if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served by such a sanction.

Whether the district court's reasons are sufficiently particularized as required by statute is a question of law over which an appellate court has unlimited review. See *State v. McFeeters*, 52 Kan. App. 2d 45, 47-49, 362 P.3d 603 (2015). There are no "magic words" to satisfy the particularity requirement of K.S.A. 2016 Supp. 22-3716(c)(9). *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1013 (2015). "When something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to a concern with details." *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992). Moreover, an implicit determination that requires an appellate court to speculate about the district court's reasoning is not enough to satisfy the statute's particularity requirement. *McFeeters*, 52 Kan. App. 2d at 48-49; *State v. Wesley*, No. 111,179, 2015 WL 3868716, at *4 (Kan. App. 2015) (unpublished opinion).

After Byrd stipulated at the hearing to violating the conditions of probation, defense counsel requested that the district court reinstate Byrd's probation after a short jail sentence because failing to report is only a technical violation of probation conditions. The prosecutor asked the court to impose Byrd's underlying prison sentence. Although acknowledging that failure to report was considered a technical violation, the prosecutor asserted that Byrd presented a significant public safety risk based on her attempts to introduce drugs into a Missouri prison during the time that she had failed to

report to her probation officer. In support of this assertion, the prosecutor presented Byrd's court services officer, who explained that during the time period in which Byrd had failed to report, she was engaged in a conspiracy with her brother and his former cellmate to smuggle drugs into a Missouri prison. The court services officer advised the court that the conspiracy never came to fruition because Byrd was arrested by Missouri authorities on an unrelated charge before the coconspirators could act on their plan. Significantly, the court services officer presented the court with a copy of a written report dated December 29, 2015, which was drafted by an investigator from the MDOC, Office of the Inspector General. The report was forwarded by the MDOC investigator to the attention of Byrd's parole officer in Johnson County, Kansas, and contained the following details of Byrd's plans to introduce contraband into the prison.

On November 6, 2015, the private company monitoring the inmate phone system at Western Missouri Correctional Center (WMCC) sent the MDOC information indicating that inmate Charles Byrd was possibly conspiring to introduce contraband into WMCC. An investigator from the MDOC, Office of the Inspector General, reviewed the information and found it to be valid intelligence.

The report reflects that Charles spoke to his sister (Byrd) seven times and to his former cellmate (Billy Bonar) eight times during the 3-day period from November 4 to November 6, 2015, in order to develop a plan to introduce drugs into WMCC through the prison visitation process. Based on review of the phone call transcripts, the MDOC investigator generally described the conspiracy to introduce drugs into the facility as follows: "Contextually, it appears that parolee Byrd will front an unknown drug to parolee Bonar, who will then give them to an unknown civilian and as yet unapproved visitor to give to [Charles] during a visit."

Notwithstanding the 15 phone calls from Charles to Byrd and Bonar in furtherance of the alleged conspiracy to channel drugs into WMCC, the parties were unsuccessful in

6

accomplishing their goal. On the morning of November 14, 2015, Byrd was at her sister's house when a bail bondsman searching for an absconder attempted to enter the house. One of the occupants in the house allegedly fired a gun at the bondsman. When the police arrived, all of the house occupants, including Byrd, were arrested. Byrd was sent to WERDCC and then to Johnson County, Kansas, based on her outstanding arrest warrant for an alleged probation violation. The investigator forwarded the December 29, 2015, written report to Byrd's probation officer in Johnson County, Kansas.

After the court had an opportunity to review the report, the prosecutor noted that he and defense counsel had both received this report about a week and a half prior to the revocation hearing. Defense counsel acknowledged receiving the report as noted by the prosecutor but objected to the report being used to determine Byrd's disposition. Because the State was not alleging that Byrd had absconded or committed a new offense, defense counsel argued use of the report was improper. The prosecutor disagreed, claiming the report was not relevant to establish Byrd committed a new crime but instead was relevant to the court's decision regarding disposition. Specifically, the prosecutor argued that Byrd's conduct as described in the report supported a finding that she was a public safety risk, which meant that the court could bypass intermediate sanctions.

The district court denied Byrd's request to reinstate probation and ordered Byrd to serve her underlying prison sentence. Specifically, the judge stated,

> "The order of probation from this Court was in 2014, September 11, 2014.
> "The motion to revoke was filed in November, shortly thereafter because the defendant was not reporting.
> "She stipulated to the motion. Her whereabouts were unknown. She came in, and probation was revoked and reinstated. I did extend it. I ordered that she complete the adult residential center, and I was aware that she had holds and noted that. She would address that hold before reporting, and to report immediately. She didn't do that.

7

"Another motion to revoke was filed. The defendant had been released and not reported. Her whereabouts, again, were unknown. That is significant to me.

"This is not a first-time revocation. I gave her another chance on probation, and then this report from the [MDOC] indicates, I believe, a significant public safety risk. Not reporting at all during the timeframe. She was supposed to be at the center during all this activity. She knew that was ordered, and instead she was running amuck. She knew. She had been here before and had violated before. She had not reported.

"So I do find that [K.S.A.] 22-3716(c)(9) is applicable, and the motion to reinstate will be denied.

"The defendant will be ordered to serve her time."

The district court's findings from the bench sufficiently set forth with particularity its reasoning for finding that the safety of the public would be jeopardized by the imposition of an intermediate sanction. The district court first set forth Byrd's history of violating the terms of her probation by failing to report. The court then discussed the MDOC report, which described Byrd's actions during the time period that she was supposed to be housed at an adult residential center. This report outlined telephone conversations that Byrd was having with her brother, who was incarcerated in Missouri. These conversations centered on introducing Byrd to her brother's former cellmate in order to facilitate drug transactions. The district court found that the report indicated "a significant public safety risk." These findings reflect more than an implicit determination that an intermediate sanction in Byrd's case would jeopardize public safety. The court's statements demonstrate that intermediate sanctions would jeopardize the community due to Byrd's actions during her time outside of custody.

*Due process*

Next, Byrd argues the district court violated her due process rights by relying on the MDOC report to bypass intermediate sanctions and impose her underlying prison sentence.

As a preliminary matter, Byrd did not raise this argument before the district court. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are, however, several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Byrd concedes that she failed to raise this argument below but argues that our review is warranted under either of the first two exceptions. Because Byrd is alleging a violation of her due process rights, we will review her argument under the second exception.

Whether Byrd's due process rights were violated is a question of law over which an appellate court exercises unlimited review. See *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). To the extent that resolution of this argument involves statutory interpretation, the interpretation of a statute is also a question of law subject to unlimited review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

"The Due Process Clause imposes procedural and substantive due process requirements whenever the State deprives someone of liberty, such as through the revocation of an individual's probation." *Hall*, 287 Kan. at 143; see *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (probationers entitled to due process). However, because revocation of probation is not part of a criminal proceeding, the full panoply of rights due a defendant in a criminal case is not applicable to a probation revocation proceeding:

9

> "Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. The probationer also has the right to the assistance of counsel. [Citation omitted.]" *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002).

See K.S.A. 2016 Supp. 22-3716(b)(1) (probation officer shall submit written report detailing in what manner defendant has violated terms of probation); K.S.A. 2016 Supp. 22-3716(b)(2) (defendant entitled to hearing in open court on the violation). Defendants receive less than constitutional due process if they, in fact, suffer deprivations based on grounds other than those of which they have been given notice. See *State v. Hagan*, No. 106,338, 2012 WL 5392105, at *2 (Kan. App. 2012) (unpublished opinion) (due process violation for district court to revoke probation based upon reasons not contained in warrant).

Byrd suggests that the State's introduction of the MDOC report into evidence during the disposition phase of the hearing amounted to a new allegation that was not set forth in the State's motion to revoke. Byrd also suggests that the district court's subsequent use of the MDOC report to bypass intermediate sanctions based on public safety violated her due process rights because she had no notice of, or opportunity to be heard on, the allegations contained in the report.

We are not persuaded by Byrd's arguments. Byrd was provided with written notice of the alleged probation violation and the evidence against her when the State filed its October 19, 2015, motion asserting that Byrd had violated the terms of her probation for failure to report. Specifically, the motion stated:

10

"On April 04, 2015, the defendant was released to address a detainer with Wyandotte County, Kansas. She was remanded to the Kansas Department of Corrections and released on August 21, 2015 to the Missouri Department of Corrections. She has been released from custody and has not reported for supervision. Her whereabouts are unknown."

The probation revocation hearing took place on January 21, 2016, where Byrd, who was represented by counsel, stipulated to violating her probation for failure to report. By stipulating to the violation, Byrd waived her right to a hearing on the matter, which included the right to present evidence and witnesses and the right to confront and cross-examine adverse witnesses. The minimum due process required for a probation revocation proceeding was met in this case.

Moreover, the State's introduction of the MDOC report into evidence during the disposition phase of the hearing did not constitute a new probation violation that the State was required to allege in a motion to revoke; rather, it was evidence used to support the State's request that the district court bypass intermediate sanctions for public safety reasons. Relevant here, K.S.A. 2016 Supp. 22-3716(c)(9) allows a district court to bypass intermediate sanctions "if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized . . . by such sanction." The statute does not require the State to provide notice that it intends to ask the court to find that a violator poses a public safety risk or otherwise provide notice of any evidence it may rely on in making such a request. Nor does the statute require the district court to provide notice of any evidence it may rely on in making a finding that a violator poses a public safety risk. In the absence of any language stating otherwise, we will not read any such requirements into K.S.A. 2016 Supp. 22-3716(c)(9). See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (appellate court should refrain from reading something into statute that is not readily found in its words).

Notably, Byrd's due process argument is further undermined by the fact that defense counsel actually received notice and an opportunity to be heard on the lawfulness of her conduct in Missouri during the time period that she was supposed to be housed at an adult residential center in Kansas. Defense counsel readily conceded receiving the MDOC report approximately a week and a half prior to the revocation hearing. With full knowledge of the information contained in the MDOC report, Byrd voluntarily stipulated to violating the terms of her probation for failing to report to, and live in, the adult residential center in Kansas. The MDOC report referenced Byrd's conduct during the time period within which she was supposed to be on probation by living in the residential facility. The district court's reliance on the information in the MDOC report to decide whether Byrd presented a safety risk to the public in the disposition phase of her probation revocation hearing did not violate Byrd's due process rights.

Affirmed.