NOT DESIGNATED FOR PUBLICATION

No. 116,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LUIS SALAS-TORRES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed November 9, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MCANANY and POWELL, JJ.

POWELL, J.: Luis Salas-Torres was convicted of a single count of identity theft for attempting to use a fake Texas driver's license to cash a payroll check. On appeal, Salas-Torres asserts three points of error: (1) The State presented insufficient evidence that he "used" another person's identifying information with the "intent to defraud"; (2) the district court violated his constitutional right to the presumption of innocence by providing the jury with a verdict form listing the "guilty" blank before the "not guilty" blank; and (3) the district court erred by failing to comply with K.S.A. 22-4513(b) before imposing BIDS attorney fees. While we agree with Salas-Torres that the district court

1

failed to properly consider on the record his financial resources and the burden imposed by the BIDS attorney fees and, therefore, vacate that part of the district court's order and remand for reconsideration of that issue, we affirm in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2014, Danette Cobb was working at a Walmart Money Center in Johnson County. Among the services she provided at the money center, Cobb cashed checks for Walmart customers. Store policy mandated that customers provide a valid government-issued identification in order to cash a check. Typically, if a customer provided a driver's license, Cobb would verify its validity by looking at the hologram, the color, the issue date and expiration date, and the date of birth. If a customer was cashing a check for the first time, Cobb would enroll the customer into Walmart's system by entering the customer's name, driver's license number, and social security number.

That morning, an individual approached Cobb's counter to cash a check and handed her a Texas driver's license along with a payroll check for $1,850.58. The check was made payable to Roger Ruiz and was signed "Roger Ruiz" on the back. The Texas driver's license appeared to be issued in the name of Roger Ruiz and contained a picture which matched the face of the man standing in front of Cobb. However, Cobb noticed that the picture's color appeared off, there was no hologram, and the magnetic strip located on the back of the license looked fuzzy. Before entering the man's information into the system, Cobb called a store manager for assistance. After talking with her manager, Cobb called the police. Cobb reported that a man had given her fake identification and was now asking for it back so that he could cash his check at another Walmart. The dispatch operator told Cobb to keep the customer there until an officer could arrive.

2

Officer Hunter Clyde with the Overland Park Police Department arrived at the Walmart Money Center to investigate a suspected forged check. He spoke with Cobb, who told Clyde that she suspected she had been given a fake driver's license and a fake check. The person Cobb identified as owning the documents identified himself to Clyde as Luis Daniel Salas-Torres. Salas-Torres provided a border crossing card that matched his given name.

Clyde testified that he also questioned the authenticity of the Texas driver's license. When he spoke with Salas-Torres about it, Salas-Torres admitted he gave the license to Cobb to cash the payroll check and that he had paid someone $100 for the license. The police determined that the license number did not belong to Ruiz or Salas-Torres but belonged to a woman named Amy McArthur. The police also determined that the check was valid.

In January 2014, the State charged Salas-Torres with one count of identity theft under K.S.A. 2013 Supp. 21-6107, a severity level 8 nonperson felony, for the use of McArthur's Texas driver's license number. Following a jury trial in February 2016, Salas-Torres was found guilty, and the district court sentenced him to 12 months' probation with an underlying prison term of 7 months. The district court also ordered, among other things, that Salas-Torres pay Board of Indigent Defense Service (BIDS) attorney fees.

Salas-Torres timely appeals.

WAS SALAS-TORRES' CONVICTION OF IDENTITY THEFT
SUPPORTED BY SUFFICIENT EVIDENCE?

Salas-Torres first asserts the State presented insufficient evidence to convict him of identity theft because it did not prove that he "used" McArthur's personal identifying information or that he acted with an "intent to defraud."

3

"'When the sufficiency of the evidence is challenged in a criminal case, [we review] the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016) (quoting *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 [2015]). "'In making a sufficiency determination, [we do] not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016) (quoting *State v. Kendall*, 300 Kan. 515, 523, 331 P.3d 763 [2014]).

K.S.A. 2013 Supp. 21-6107 defines identity theft as

"(a) . . . obtaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to:
(1) Defraud that person, or anyone else, in order to receive any benefit . . . .
. . . .
"(e) As used in this section:
. . . .
(2) 'personal identifying information' includes, but is not limited to . . .
. . . .
(E) driver's license number."

In order for Salas-Torres to be found guilty of identity theft, the State was required to prove that Salas-Torres used the driver's license number belonging to McArthur with an intent to defraud Walmart and receive a benefit.

Salas-Torres argues that his conviction is based on insufficient evidence that he used McArthur's driver's license number. Specifically, Salas-Torres argues that the term "use" must amount to more than mere possession; the person must "'put [another's personal identifying information] into service or employ for a purpose.'" See *State v.*

4

*Valdiviezo-Martinez*, No. 111,447, 2015 WL 7693673, at *8 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., dissenting), *rev. granted* 305 Kan. 1257 (2016). Additionally, Salas-Torres argues that because Walmart did not rely on the driver's license number in cashing the check, he did not use McArthur's driver's license number in violation of K.S.A. 2013 Supp. 21-6107(a).

Addressing Salas-Torres' complaints requires us to interpret the language contained in the identity theft statute, which raises issues of statutory interpretation and is subject to our unlimited review. See *State v. Davey*, 306 Kan. 814, 820, 397 P.3d 1190 (2017). "'The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained.'" *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016) (quoting *State v. Reese*, 300 Kan. 650, 653, 333 P.3d 149 [2014]). The first step of the process is to look at the statutory language enacted, "giving common words their ordinary meanings, and refraining from reading something into the statute that is not readily found in its words." *Davey*, 306 Kan. at 820 (citing *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 [2016]).

K.S.A. 2013 Supp. 21-6107 does not define the word "use" or "using," but Black's Law Dictionary 1775 (10th ed. 2014) defines "use" as "[t]he application or employment of something." Even if we assume that Salas-Torres is correct in the meaning of the word "use," sufficient evidence supports a finding that Salas-Torres used McArthur's driver's license number in violation of K.S.A. 2013 Supp. 21-6107(a).

Viewing the evidence in the light most favorable to the State, the evidence shows that Walmart requires a valid government-issued identification to cash a check. Walmart uses driver's license numbers when cashing checks and enrolling new customers. Salas-Torres presented a Walmart employee, Cobb, with a payroll check and a Texas driver's license in an effort to cash the check. The driver's license showed the name of Ruiz—which matched the name in the payroll check—but had Salas-Torres' picture on it and

5

contained the driver's license number of McArthur. In attempting to validate the driver's license, Cobb examined it and determined the license had flaws which led her to question its authenticity. This prompted Cobb to contact law enforcement who determined that the driver's license number was not that of Ruiz. Moreover, upon questioning by law enforcement, Salas-Torres admitted that the driver's license was fake and that he paid $100 for it. To us, the State presented sufficient evidence showing that Salas-Torres used or employed a fake driver's license to cash a check and that McArthur's personal identifying information contained on the license was used in an effort to validate the fake driver's license in the hopes that Walmart would accept it and cash the check. We have no trouble in concluding that Salas-Torres used McArthur's driver's license number.

Salas-Torres also argues that his conviction is based on insufficient evidence that he had an intent to defraud Walmart.

As stated above, K.S.A. 2013 Supp. 21-6107(a)(1) provides that a person commits identity theft by having an intent to defraud any person by using another person's personal identifying information to receive any benefit.

In *State v. Martinez-Perez*, No. 109,383, 2014 WL 2401660 (Kan. App. 2014) (unpublished opinion), a panel of this court reviewed whether sufficient evidence supported a finding that the defendant, Francisco Martinez-Perez, had an intent to defraud when he provided a fake driver's license to a police officer at a traffic stop. During the traffic stop, Martinez-Perez told the officer his name was Francisco Sotelo. The driver's license Martinez-Perez provided to the officer showed the name Francisco Sotelo and used the driver's license number of John Michael Murphy. Martinez-Perez argued that mere possession of another's personal identifying information did not demonstrate an intent to defraud. The *Martinez-Perez* court found the argument unavailing:

6

"But [Martinez-Perez] ignores the fact that he did not merely possess the fake driver's license. To the contrary, he offered it to the officer and claimed it was his. He explicitly misidentified himself as Francisco Sotelo. The State presented sufficient evidence that Martinez-Perez intended to defraud the officer by leading him to believe that he was Francisco Sotelo so that he would not suffer the consequences of being found to have a previous DUI conviction and being found to be in this country illegally." 2014 WL 2401660, at *2.

Similarly, here, the State presented sufficient evidence that Salas-Torres intended to defraud Walmart. Salas-Torres admitted to using the fake Texas driver's license with McArthur's driver's license number so that Walmart would cash the check made payable to Ruiz. In using the fake driver's license to have Walmart cash a check, Salas-Torres purported to have a valid driver's license belonging to Ruiz. Therefore, viewing the evidence in a light most favorable to the State, the State presented sufficient evidence that Salas-Torres had an intent to defraud and sufficient evidence to support Salas-Torres' conviction for identity theft.

### DID THE DISTRICT COURT VIOLATE SALAS-TORRES' CONSTITUTIONAL RIGHT TO A PRESUMPTION OF INNOCENSE?

Next, Salas-Torres argues that the district court violated his constitutional right to the presumption of innocence by placing the "guilty" blank before the "not guilty" blank on the verdict form. The district court provided a verdict form that read:

"We, the jury, find the defendant guilty of identity theft.

Presiding Juror

"We, the jury, find the defendant not guilty of identity theft.

Presiding Juror"

7

The district court also provided two relevant jury instructions. Jury Instruction No. 5 read: "Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case is a matter for determination by the Court." Jury Instruction No. 6 read:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. *You must presume that he is not guilty unless you are convinced from the evidence that he is guilty*.
>
> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

We apply a three-step analysis when analyzing a challenge to a verdict form by "(1) [d]etermining whether [we] can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. [Citation omitted.]" *State v. McDaniel*, 306 Kan. 595, 614, 395 P.3d 429 (2017) (quoting *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 [2016]).

Because Salas-Torres preserved the issue for appeal by objecting to the verdict form at trial, we must determine if an error occurred and, if any is found, whether the error was harmless. See *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015). In considering the merits of Salas-Torres' argument, we examine whether the verdict form was legally and factually appropriate under an unlimited standard of review of the entire record. See *McDaniel*, 306 Kan. at 614. To be legally appropriate, the verdict form "'must always fairly and accurately state the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016) (quoting *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 [2012]), *cert. denied* 137 S. Ct. 1381 (2017). A legally inappropriate verdict form

8

amounts to instructional error if both the verdict form and the instructions as a whole failed to fairly and accurately state the law on the defendant's presumption of innocence. See *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014).

The Kansas Supreme Court has addressed the same issue raised by Salas-Torres in *State v. Wesson*, 247 Kan. 639, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), *disapproved of on other grounds by State v. Rogers*, 282 Kan. 218, 226, 144 P.3d 625 (2006). In *Wesson*, the court found that the defendant had provided no authority—and the court also could find none—to support his argument that a verdict form placing "guilty" before "not guilty" violated a defendant's presumption of innocence. The court reasoned that "[a] defendant is presumed innocent and the jury is so instructed. The purpose of a trial is to determine if the accused is guilty." 247 Kan. at 652. The court found no prejudice because any purported error in the verdict form was cured by a jury instruction that read: "'The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must assume the defendant is not guilty unless the evidence convinces you of the defendant's guilt.'" 247 Kan. at 652; see *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004) (following *Wesson* reasoning); *State v. Pack*, No. 110,467, 2015 WL 1513974, at *5 (Kan. App. 2015) (unpublished opinion) (same).

Salas-Torres acknowledges this precedent but argues that it is based on a misstatement of law—that the purpose of a trial is to determine guilt. Salas-Torres instead relies on excerpts from two United States Supreme Court decisions—*Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), and *Williams v. Florida*, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970)—to support his assertion. In each case, the Court discusses the importance and historical background of a criminal defendant's constitutional right to a trial by jury. See *Duncan*, 391 U.S. at 154-58, 156 n.23; *Williams*, 399 U.S. at 100. However, we find Salas-Torres' argument unpersuasive

9

because the cases he cites do not address whether a verdict form amounts to an instructional error if the "guilty" blank is placed before the "not guilty" blank.

The verdict form and the jury instructions provided were legally appropriate, and because Salas-Torres does not argue that the verdict form was not factually appropriate, we find the verdict form and jury instructions to be factually appropriate on Salas-Torres' presumption of innocence. There was no instructional error, and Salas-Torres' constitutional right to a presumption of innocence was not violated.

## DID THE DISTRICT COURT FAIL TO COMPLY WITH K.S.A. 22-4513(b) BEFORE IMPOSING BIDS ATTORNEY FEES?

Finally, Salas-Torres argues the district court erred in failing to inquire into his ability to pay BIDS attorney fees before ordering them. The State concedes this issue on appeal.

In determining whether to assess fees, K.S.A. 22-4513(b) states that the district court "shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." The Kansas Supreme Court held in *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006), that the district court "must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision."

Here, the district court did not explicitly discuss on the record Salas-Torres' financial resources or the burden that payment of BIDS attorney fees would impose on him. Defense counsel stated on the record that Salas-Torres remained unemployed throughout his trial and, potentially, had become subject to deportation. The district court did not inquire further into Salas-Torres' ongoing financial obligations, such as

10

examining his existing debts or his ability to find employment after the trial. Accordingly, we vacate the BIDS attorney fees payment order and remand the issue for the district court to conduct a proper inquiry as required by K.S.A. 22-4513(b) and *Robinson*, 281 Kan. at 546.

Affirmed in part, vacated in part, and remanded with directions.